**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
Abraham Evans,                          )
                                        )
    Plaintiff,                          )
                                        )
       v.                             )        Civil No. 1:14-cv-01652 (APM)
                                        )
District of Columbia,                   )
                                        )
    Defendant.                          )
_____ )

## MEMORANDUM OPINION

### I.   INTRODUCTION

Plaintiff Abraham Evans filed this lawsuit against his former employer, Defendant District of Columbia, alleging discriminatory treatment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § *et seq.*, and the District of Columbia Human Rights Act, D.C. Code § 14.01.1 *et seq.* Plaintiff—an African-American police officer who worked in the District of Columbia Metropolitan Police Department ("MPD")—asserts that Defendant terminated his employment on the basis of his race. Defendant disagrees and instead contends that it fired Plaintiff because he engaged in conduct that violated internal MPD policies and lied to MPD investigators about that conduct.

This matter is before the court on Defendant's Motion for Summary Judgment. Having reviewed the pleadings and evidence, the court finds that no reasonable factfinder could conclude that Defendant discriminated against Plaintiff when it terminated his employment. Accordingly, the court grants Defendant's Motion for Summary Judgment.

II.     BACKGROUND

A.      Factual Background

In 2002, the District of Columbia Metropolitan Police Department ("MPD") hired Plaintiff as a police officer. Pl.'s Opp'n to Def.'s Mot. for Summ. J., ECF No. 25 [hereinafter Pl.'s Opp'n], at 2. Before his termination in 2013, Plaintiff had received several performance awards and had not been cited for any performance-related issues. *Id*.

In December 2008, MPD received a complaint that several on-duty MPD officers were being paid to provide security for the Calvert Woodley liquor store, which recently had been robbed. Pl.'s Opp'n at 2–3; Pl.'s Resp. to Def.'s Stmt. of Material Facts, ECF No. 25 [hereinafter Pl.'s Resp.], ¶ 1; Def.'s Stmt. of Material Facts, ECF No. 23 [hereinafter Def.'s Stmt.], ¶ 1. In response, MPD's Internal Affairs Division and the FBI launched an investigation into the allegations. Def.'s Stmt. ¶ 2; Pl.'s Resp. ¶ 2. As part of that investigation, MPD officers set up surveillance at Calvert Woodley from December 2008 through May 2009, which revealed that Plaintiff, along with two other MPD officers, would arrive at the liquor store around closing time, receive an envelope from a store employee, and stand guard until the store closed. Def.'s Stmt. ¶ 3; Pl.'s Resp. ¶ 3. Based on the surveillance footage, MPD and FBI investigators questioned several Calvert Woodley employees who admitted to paying MPD officers, including Plaintiff, for extra security during closing hours. Def.'s Stmt. ¶ 4. The investigators then targeted an MPD officer implicated in the allegations, Officer Nathaniel Anderson, who eventually admitted to accepting payment for providing security and informed investigators that two other officers, including Plaintiff, had done the same. Pl.'s Opp'n, Ex. 2, Final Investigative Report for Abraham Evans, ECF No. 23-2 [hereinafter Evans Report], at 4–5.

The United States Attorney's Office pursued criminal charges against the implicated MPD officers. *Id*. at 1–2. On November 21, 2010, Officer Anderson pleaded guilty to illegally supplementing his salary and ultimately resigned from MPD. *Id*. at 5. On January 21, 2011, Plaintiff was indicted on charges of receiving illegal gratuities and illegal supplementation of salary. Def.'s Stmt. ¶ 5; Pl.'s Resp. ¶ 5. A year later, however, prosecutors moved to dismiss the indictment after discovering that Plaintiff had provided security to the liquor store while on unpaid lunch breaks, which meant that he had not supplemented his income while on duty.[1] Evans Report at 10.

Notwithstanding dismissal of the indictment, MPD Internal Affairs continued its investigation of Plaintiff's conduct to determine whether to bring administrative charges. On February 22, 2012, MPD investigators interviewed Plaintiff. *Id*. at 7. Plaintiff claimed that his lieutenant had ordered him and the other officers on his shift to provide extra security for Calvert Woodley during its closing hours. *Id*. Plaintiff flatly denied accepting any money in exchange for providing those security services and explained that the envelopes he was seen accepting on the surveillance footage did not contain cash, but rather, discounts on certain bottles of wine that he had purchased while on duty. *Id*. at 8.

MPD Internal Affairs issued its Final Investigative Report on June 4, 2012. *Id*. at 1. The Report concluded that Plaintiff had violated MPD policies by accepting unauthorized employment and compensation; receiving gratuities while on duty; and making false statements to both MPD and FBI investigators during the course of their investigations. *Id*. at 10–11; Def.'s Stmt. ¶ 6; Pl.'s Resp. ¶ 6.

---

[1] *See United States v. Rhinehart*, 11-cr-00020, Mot. to Dismiss Indictment, ECF No. 16 (D.D.C. Nov. 22, 2011).

On January 17, 2013, Plaintiff was afforded an Adverse Action Hearing before a panel of three senior MPD officers: Commander James Crane, Captain Marvin Lyons, and Captain Andrew Wright ("the Panel"). Plaintiff was represented by counsel and both sides were able to present evidence and witnesses to the Panel. At the hearing, two witnesses testified that they had personally paid Plaintiff money in exchange for providing security services for Calvert Woodley. Def.'s Stmt. ¶ 7; Pl.'s Resp. ¶ 7. The Panel ultimately found Plaintiff guilty of all three charges and recommended his termination. Def.'s Stmt. ¶ 9; Pl.'s Resp. ¶ 9.

On March 4, 2013, the MPD Human Resource Management Division issued a Final Notice of Adverse Action, which formally adopted the Panel's findings; notified Plaintiff that he would be terminated effective April 19, 2013; and informed him of his right to appeal to the MPD Chief of Police. *See* Def.'s Mem. in Supp. of Mot. for Summ. J., ECF No. 23 [hereinafter Def.'s Mot.], Ex. 1, Final Notice of Adverse Action for Abraham Evans, ECF No. 23-1 [hereinafter Evans Final Notice], at 3–4.

### B.     Procedural Background

On October 2, 2014, Plaintiff filed suit in this court, alleging discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.*, and the District of Columbia Human Rights Act, D.C. Code § 14.01.1 *et seq. See* Compl., ECF No. 1, ¶ 38. The crux of Plaintiff's discrimination claims is that the MPD investigation leading to his termination was in fact pretext for race discrimination and that other non-African American officers had been treated more leniently than Plaintiff for committing similar misconduct.

On February 15, 2016, following discovery, Defendant filed a Motion for Summary Judgment, arguing that it had terminated Plaintiff for a legitimate non-discriminatory reason— specifically, his acts of misconduct and deceit, as detailed in the Final Notice of Adverse Action.

*See* Def.'s Mot at 4–7.  On April 11, 2016, Plaintiff filed his Opposition to Defendant's Motion for Summary Judgment, claiming that Defendant's proffered non-discriminatory reason for terminating him was a pretext for discrimination.    *See generally* Pl.'s Opp'n.  On May 13, 2016, Defendant filed a Reply to Plaintiff's Opposition.    *See* Def.'s Reply in Supp. of Mot. for Summ. J., ECF No. 29 [hereinafter Def.'s Reply].

## III.   LEGAL STANDARD

Summary judgment will only be granted if the movant can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is "genuine" only if a reasonable fact-finder could find for the nonmoving party, and a fact is "material" only if it is capable of affecting the outcome of litigation.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A non-material factual dispute is insufficient to prevent the court from granting summary judgment.  *Id.*

Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case . . . on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion" and identifying those portions of the record that it believes "demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.

Once the moving party has made an adequate showing that a fact cannot be disputed, the burden shifts to the party opposing summary judgment to "set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 250 (internal quotation marks omitted).  The nonmoving party may oppose the motion using "any of the kinds of evidentiary materials

listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the showing to which [the Court has] referred." *Celotex Corp.*, 477 U.S. at 324. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. However, "to defeat a motion for summary judgment, the non-moving party must offer more than mere unsupported allegations or denials." *Dormu v. District of Columbia*, 795 F. Supp. 2d 7, 17 (D.D.C. 2011). In other words, if the non-movant's evidence is "merely colorable or . . . is not significantly probative . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted). Summary judgment, then, is appropriate when the nonmoving party fails to offer "evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 252.

## IV.   DISCUSSION

Under Title VII, an employer may not "discharge any individual, or otherwise . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Nor may an employer "limit, segregate, or classify his employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(2). Similarly, under the DCHRA, an employer may not "fail or refuse to hire, or to discharge, any individual; or otherwise to discriminate against any individual, with respect to his compensation, terms, conditions, or privileges of employment, including promotion; or to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities, or otherwise adversely affect his status as an employee." D.C. Code § 2-1402.11(a)(1).

In the absence of direct evidence of discrimination, Title VII and DCHRA claims are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Gaujacq v. EDF, Inc.*, 601 F.3d 565, 576 (D.C. Cir. 2010). The plaintiff bears the burden of proving a prima facie case of discrimination; if he does so, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981). The plaintiff then must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* at 253.

In the summary judgment context, however, once an employer sets forth a legitimate, non-discriminatory reason for the employment action, "the question whether the employee actually made out a prima facie case is no longer relevant, and thus disappears and drops out of the picture." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008) (internal quotations omitted); *see also Nurriddin v. Bolden*, 818 F.3d 751, 758 (D.C. Cir. 2016) ("At the summary judgment stage, once the employer has claimed a nondiscriminatory reason for its actions, this burden-shifting framework disappears."). At that point, the court must determine whether "the employee [has] produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race" or some other prohibited ground. *Brady*, 520 F.3d at 494; *accord Nurriddin*, 818 F.3d at 758 ("The 'one central inquiry' that remains is whether a reasonable jury could infer retaliation or discrimination from the evidence."). Courts should consider this issue "in light of the total circumstances of the case," asking "whether the jury could infer discrimination from the combination of (1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and

(3) any further evidence of discrimination that may be available to the plaintiff . . . or any contrary evidence that may be available to the employer." *Hamilton v. Geithner*, 666 F.3d 1344, 1351 (D.C. Cir. 2012) (internal quotation marks omitted); *see also Nurriddin*, 818 F.3d at 759.

Here, Defendant has asserted a non-discriminatory reason for Plaintiff's termination: its finding that Plaintiff engaged in unauthorized employment, accepted gratuities while on duty, and misled MPD investigators in an attempt to cover up his misconduct. Thus, the question whether Plaintiff made out a prima facie case is no longer relevant, and the court instead turns directly to the whether Plaintiff produced evidence sufficient—under a preponderance of the evidence standard—for a reasonable jury to find that Defendant's stated reason was not the actual reason for his termination and that the true reason was his race. *See Brady*, 520 F.3d at 495; *see also Teneyck v. Omni Shoreham Hotel*, 365 F.3d 1139, 1154 (D.C. Cir. 2004) ("[O]nce the defendant has responded with rebuttal evidence, the factfinder normally proceeds to the ultimate issue on the merits to determine whether the employer intentionally discriminated against the plaintiff.").

## A.     The Reasonableness of Defendant's Conclusion that Plaintiff Had Committed Misconduct

Plaintiff contends that the court should deny summary judgment because there is a genuine dispute as to whether Defendant's proffered reason for terminating him—namely, his violation of various MPD policies—was the true reason for his termination. Pl.'s Opp'n at 15–21. The crux of Plaintiff's argument is that summary judgment is inappropriate because "[t]here are a number of discrepancies and holes" in the Panel's determination, "causing it to barely hold water." *Id.* at 15. Plaintiff, for instance, points out that several of the witnesses who testified before the Panel either did not acknowledge paying Plaintiff themselves or did not otherwise identify him as someone who had received payment from other Calvert Woodley employees. *Id.* at 15–16. As to

the two witnesses who did acknowledge paying him—Robert Starr and Kevin Ehrman—Plaintiff asserts that a "credibility determination is warranted" as to their testimony and that, as a result, summary judgment is inappropriate at this time. *Id.* at 16–17 (arguing as to Starr that "a credibility determination is warranted" because he gave contradictory statements to investigators regarding whether he recognized Plaintiff and as to Ehrman that "[a] credibility determination needs to be made as to whether [he] held a grudge against the store and was using the investigation as an opportunity to cause some legal issues for it"). In short, Plaintiff argues that a reasonable jury could infer pretext from the inadequacy of the evidence against him. *Id.* at 15–21.

Plaintiff cannot, however, establish pretext by either attacking the credibility of the witnesses who testified before the Panel or re-litigating the correctness of the Panel's findings. As the Court of Appeals has made clear, "[o]nce the employer has articulated a non-discriminatory explanation for its action . . . the issue is not the correctness or desirability of [the] reasons offered . . . [but] whether the employer honestly believes in the reasons it offers." *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (internal quotation marks omitted). In other words, "[a]n employer's action may be justified by a reasonable belief in the validity of the reason given even though that reason may turn out to be false." *George v. Leavitt*, 407 F.3d 405, 415 (D.C. Cir. 2005). "If the employer's stated belief about the underlying facts is reasonable in light of the evidence . . . there ordinarily is no basis for permitting a jury to conclude that the employer is lying about the underlying facts." *Brady*, 520 F.3d at 495.

The question here, then, is not whether Plaintiff in fact violated MPD policies, but whether MPD decision-makers honestly and reasonably believed that he did so. *See id.* at 496 (finding that summary judgment was proper where the plaintiff "did not produce evidence sufficient to show that [his employer's] conclusion was dishonest or unreasonable"); *DeJesus v. WP Company LLC*,

No. 15-7126, 2016 WL 6694952, at *5 (D.C. Cir. Nov. 15, 2016) (emphasizing that the decision-maker must both reasonably *and* honestly believe that the employee committed a transgression). As to that inquiry, Plaintiff offers no argument or evidence. Plaintiff points to no proof that would cause a factfinder to doubt the reasonableness of either the Panel's credibility determinations or its ultimate findings. *Cf. Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 296 (D.C. Cir. 2015) ("A plaintiff might also establish pretext with evidence that a factual determination underlying an adverse employment action is egregiously wrong, because if the employer made an error too obvious to be unintentional, perhaps it had an unlawful motive for doing so." (internal quotation marks omitted)). Nor does he offer any proof that MPD's decision to accept the Panel's findings and its recommendation to terminate Plaintiff was "so unreasonable that it provokes suspicion of mendacity." *DeJesus*, 2016 WL 6694952, at *5. In short, Plaintiff must do more than dispute the credibility of the witnesses who testified against him to defeat summary judgment. *See Brady*, 520 F.3d at 495–96 (rejecting argument that it is "the jury's job to decide factual and credibility questions" concerning whether the underlying incident ever occurred). He has not done so in this case.

The court also finds unavailing Plaintiff's argument that "the timeline of events does not add up and, thus, indicates that [Defendant's] reason for terminating [him] is pretextual for discrimination." Pl.'s Opp'n at 20. More specifically, Plaintiff claims that the passage of six months between his reinstatement with pay in January 2012,[2] and his being formally charged in June 2012, can only be explained by "discriminatory reasons." *Id.* But Plaintiff offers no authority for the proposition that a reasonable inference of discriminatory intent can arise from the mere

---

[2] At some point, MPD suspended Plaintiff without pay during the Internal Affairs investigation. On January 4, 2012, MPD reinstated his full police powers with pay. *See* Pl.'s Opp'n, Ex. L, Reversal of Indefinite Suspension without Pay for Abraham Evans, ECF No. 25-9.

passage of time.  Indeed, on this record, there is an obvious, non-discriminatory explanation for the six-month lapse—during that time MPD was completing its investigation and preparing its findings and recommendations.  The record demonstrates that MPD Internal Affairs re-interviewed Plaintiff on February 22, 2016.  Evans Report at 7.  It then held a "pre-write up conference" on May 15, 2012.  *Id*. at 12.  Nothing on this record establishes that the time taken to accomplish those tasks rendered the investigation "so unsystematic and incomplete that a factfinder could conclude that the employer sought, not to discover the truth, but to cover up its own discrimination."  *Burley*, 801 F.3d at 296.  Thus, Plaintiff has failed to show that the investigation itself was a pretext for discrimination.

## B.     Comparator Evidence

Plaintiff offers a second rationale for inferring pretext:  He was treated more harshly compared to other similarly situated employees who are not African American.  Pl.'s Opp'n at 11–14.  Plaintiff identifies a number of non-African American MPD officers—S.B., D.H., C.P., J.D., D.P., and J.R.—who he claims "committed similar . . . or even worse offenses" and were disciplined or investigated by Defendant, but were not terminated from their positions.  *Id*.; *see also* Pl.'s Resp. ¶¶ 7–16.  The court finds that none of those officers are an appropriate comparator.

"One way to discredit an employer's justification is to show that similarly situated employees of a different race received more favorable treatment."  *Royall v. Nat'l Ass'n of Letter Carriers, AFL–CIO,* 548 F.3d 137, 145 (D.C. Cir. 2008).  "For a plaintiff to prove that she is similarly situated to another employee, she must demonstrate that she and the alleged similarly-situated employee 'were charged with offenses of comparable seriousness,' and 'that all of the relevant aspects of her employment situation were nearly identical to those of the other employee.'"  *Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1115 (D.C. Cir. 2016)

(alteration adopted) (quoting *Burley*, 801 F.3d at 301).  "'Factors that bear on whether someone is an appropriate comparator include the similarity of the plaintiff's and the putative comparator's job and job duties, whether they were disciplined by the same supervisor, and, in cases involving discipline, the similarity of their offenses."' *Id*. (quoting *Burley*, 801 F.3d at 301).

Defendant argues that Plaintiff has not satisfied the *Wheeler* requirements because he failed to demonstrate that the proposed comparators: (1) committed substantially similar offenses; (2) had comparable jobs or job duties; and (3) were disciplined by the same supervisor. Def.'s Mot. at 6–7; Def.'s Reply at 6–9. Defendant's second argument is unconvincing, as all proposed comparators were MPD officers and, thus, were subject to the same policies. *See Mann v. Washington Metro. Area Transit Auth.*, 168 F. Supp. 3d 71, 84 (D.D.C. 2015) (observing that "just because two employees occupy different positions does not automatically render a comparison between them inappropriate," where they are subject to the same workplace policies). Therefore, the court will only address Defendant's first and third arguments. *See Burley*, 801 F.3d at 301–02.

### 1.    *Officers S.B., J.D., D.P., and J.R*

The court begins with those four officers for whom Plaintiff provided clearly admissible evidence to support his comparator theory: S.B., J.D., D.P., and J.R. To support the theory, Plaintiff offers both deposition testimony and internal MPD documentation—namely, a Final Notice of Adverse Action for S.B. and investigative reports concerning J.D., D.P., and J.R. *See* Pl.'s Opp'n, Ex. E, Dep. Tr. of Abraham Evans, ECF No. 25-6 [hereinafter Evans Dep.]; Pl.'s Mot. to File Exs. Under Seal, ECF. No 26 [hereinafter Pl.'s Mot. to File Exs.], Ex. G, Final Notice of Adverse Action for S.B., ECF No 26-2 [hereinafter S.B. Final Notice]; Pl.'s Mot. to File Exs., Ex. H, Final Investigative Report Concerning J.D., ECF No. 26-3 [hereinafter J.D. Report]; Pl.'s

Mot. to File Exs., Ex. I, Final Investigative Report Concerning D.P., ECF No. 26-4 [hereinafter D.P. Report]; Pl.'s Mot. to File Exs., Ex. J, Final Investigative Report Concerning J.R., ECF No. 26-5 [hereinafter J.R. Report].

The evidence presented, however, fails to establish that S.B., J.D., D.P., and J.R. committed offenses that were substantially similar to Plaintiff's misconduct. Although it is not necessary that comparators engage in the exact same offense to be considered similarly situated, those comparators must have at least committed offenses of "comparable seriousness." *McDonnell Douglas*, 411 U.S. at 804. For instance, in *Wheeler*, the Court of Appeals found the proposed comparators appropriate even though their misconduct was factually distinct because, among other things, those comparators had committed "categorically similar" misconduct—there, nurses whose respective patient care was so negligent that it rose to the level of "gross misconduct." *Wheeler*, 812 F.3d at 1118–1120. Here, however, Plaintiff has failed to demonstrate that the proposed comparators' misconduct was "categorically similar."

Plaintiff was disciplined for engaging in unauthorized outside employment, making false statements about that employment, and receiving gratuities. Def.'s Stmt. ¶ 6; Pl.'s Resp. ¶ 6. Plaintiff's proposed comparators, S.B., J.D., D.P., and J.R, also were disciplined for either unauthorized employment or accepting outside compensation while on duty but, unlike Plaintiff, none of them was found to have lied to investigators when confronted with their transgressions. In fact, J.D., D.P., and J.R. all admitted their misconduct, and there is no evidence in the record that S.B. attempted to mislead MPD investigators. *See* S.B. Final Notice; J.D. Report; D.P. Report; J.R. Report. Plaintiff's additional offense of making false statements to investigators actually renders his conduct categorically *dis*similar from that of his proposed comparators. The act of dissembling by a police officer does not merely impugn the officer's integrity, it also has far-

reaching consequences for his capacity as a witness against an accused.  *See, e.g., Milke v. Ryan*, 711 F.3d 998, 1007 (9th Cir. 2013) ("That [the law enforcement officer] was disciplined for lying on the job obviously bears on his credibility and qualifies as *Giglio* evidence."); *Vaughn v. United States*, 93 A.3d 1237, 1263–64 (D.C. 2014) (holding that the failure to disclose a corrections officer's "track record for untruthfulness" warranted a new trial).  Therefore, the officers who did unauthorized off-duty work, but did not lie about that conduct, did not engage in conduct that was "categorically similar" to Plaintiff's actions.

Plaintiff attempts to bolster his comparator evidence by pointing to interrogatory responses in which Defendant admitted that, (1) in 2008, "no White members were terminated for willfully and knowingly making an untruthful statement," and (2) in 2010, although at least one Caucasian officer was found to have willfully and knowingly made an untruthful statement, none were fired. *See* Pl.'s Opp'n, Ex. K, Def.'s Resps. to Pl.'s First Req. for Admissions, ECF No. 25-8, ¶ 7. That evidence does not help Plaintiff show pretext, however, for two reasons. First, the fact that no Caucasian officers were fired in 2008 for making false statements does not establish that there were any Caucasian officers *charged* with such conduct in the first place. Indeed, in those same interrogatories, Defendant *denied* that two Caucasian officers had willfully and knowingly made false statements in 2008. *See id.* ¶ 8. Thus, the fact that no Caucasian officers were terminated in 2008 for making false statements provides no probative comparative evidence. Second, the fact that, in 2010, there was one Caucasian officer found to have made false statements, but who was not terminated, is simply not enough—without more context—for a reasonable factfinder to determine that the officer's misconduct was "categorically similar" to Plaintiff's misconduct. The record does not indicate, for instance, the nature of the untruthful statement, to whom it was directed, or whether it was coupled with other types of misconduct. A false overtime entry, for

example, is categorically different than lying to federal agents and Internal Affairs officers investigating the misconduct of supplementing salary and accepting gratuities. Stated simply, Defendant's terse interrogatory responses, without more, do not allow for the kind of meaningful comparison that would enable a factfinder to conclude that Plaintiff and the unnamed officer identified in Defendant's interrogatory were similarly situated.

In addition to failing to show that his proposed comparators committed substantially similar offenses, Plaintiff also has not shown that both he and his proposed comparators were disciplined by the same supervisors. *See Burley*, 801 F.3d at 301. Indeed, the record does not conclusively establish who made the final decision to terminate Plaintiff. MPD's Human Resource Management Department sent Plaintiff his formal termination notice in the form of the Final Notice of Adverse Action. *See Evans Final Notice*. The Notice states: "Upon consideration of the findings by the Panel and a review of the record, *I* conclude that a Preponderance of the Evidence proves that you are guilty of all charges as outlined in the Panel's attached Findings, Conclusions and Recommendations."[3] *Id*. at 2 (emphasis added). The Notice in the record does not, however, identify who the "I" is that made the decision to adopt the Panel's recommendation to terminate Plaintiff—the Notice appears to be missing a signature page. The rest of the record also does not supply an answer. It identifies the Panel members, but nowhere specifies who within MPD adopted the Panel's findings and recommendations. As a result, Plaintiff, who bears the burden of proof on this issue, has failed to demonstrate that he and his proposed comparators were disciplined by the same official.[4] *Burley*, 801 F.3d at 301.

---

[3] Although neither party entered into the record the Panel's Findings, Conclusions and Recommendations, the Notice itself makes clear that the Panel found Plaintiff guilty of each charge and recommended his termination for each violation. *Id*. at 2.

[4] There is conflicting evidence in the record as to whether then-MPD Chief Lanier was the final decision-maker. Plaintiff alleged in his Complaint that she terminated him "[o]n or around April 19, 2013," Compl. ¶ 28, and Defendant "[a]dmitted" that allegation in its Answer, *see* Answer, ECF No. 6, ¶ 28. The Final Notice of Adverse Action, however, states that Plaintiff could *appeal* his termination to Chief Lanier, *see* Evans Final Notice at 2–3, yet there is

2.      *Officers C.P. and D.H.*

Plaintiff's two other comparators—C.P. and D.H.—also do not help his case. Neither officer's actions nor discipline is established through admissible evidence so as to permit a meaningful comparison. *See Bush v. District of Columbia*, 595 F.3d 384, 386 (D.C. Cir. 2010) (holding that plaintiffs must "produce admissible evidence establishing a genuine issue of material fact" in order to survive summary judgment). Plaintiff asserts that C.P. was suspended for thirty days after making threats to First Lady Michelle Obama. Pl.'s Opp'n at 12. But that contention is supported by nothing other than inadmissible hearsay. Plaintiff testified that he learned of C.P.'s threats because "there was some sort of media on it" and that he "might have read it after it was told to [him] by an officer." Evans Dep. at 10. Furthermore, the basis for his contention that C.P. received only a 30-day suspension was because "it was told to [him] by an officer." *Id.* This type of inadmissible hearsay in insufficient to defeat summary judgment. *See Commercial Drapery Contractors, Inc. v. United States*, 133 F.3d 1, 7 (D.C. Cir. 1998).

The court rejects D.H. as a comparator for similar reasons. Plaintiff asserts that D.H. committed check forgery, loan forgery, and theft of electricity, yet was not terminated. Plaintiff did offer proof that D.H. was *investigated* for committing check forgery. *See* Pl.'s Mot. to File Exs., Ex. M, Report of Investigation and Affidavit of Forgery for D.H., ECF No. 26-6. But he also admitted that the check forgery allegations were later determined to be unfounded. *See* Evans Dep. at 2. Additionally, as to D.H.'s alleged loan forgery and electricity theft, Plaintiff conceded that the sole basis for that contention was the statements of unidentified officers. *See id.* at 5 ("Someone told me. I don't remember."); *id.* at 7 ("An officer told me. I don't have any records

---

no record evidence that he ever did so or that she ever made a decision regarding Plaintiff's employment. In any event, even if the court were to assume that Chief Lanier was in fact the final decision-maker, Plaintiff still has not shown that S.B., J.D., D.P., or J.R, were appropriate comparators, because the record does not establish that they too were disciplined by Chief Lanier. *See* S.B. Final Notice; J.D. Report; D.P. Report; J.R. Report.

of it."). Such inadmissible hearsay cannot defeat summary judgment. *See Commercial Drapery*, 133 F.3d at 7.

***

In sum, Defendant provided a non-discriminatory reason for Plaintiff's termination—his violation of multiple MPD policies, including making false statements to officials investigating his conduct—causing the burden to shift to Plaintiff to demonstrate that Defendant's reason was pretext for discrimination. For the reasons explained, Plaintiff failed to carry his burden. Accordingly, the court will grant summary judgment in favor of Defendant on Plaintiff's Title VII and DCHRA claims.[5]

## IV.    CONCLUSION

For the foregoing reasons, the court grants Defendant's Motion for Summary Judgment in its entirety. A separate order accompanies this Memorandum Opinion.

Dated:  December 1, 2016

Amit P. Mehta
United States District Judge

---

[5] The court also agrees with Defendant that Plaintiff cannot proceed on his DCHRA claim because he failed to provide the notice required under D.C. Code § 12-309. *See* Def.'s Mot. at 7–9. Plaintiff contends that he provided adequate notice by alleging in his Complaint that a "DCMPD police report was issued by the Department regarding the circumstances [of his conduct, which] put the District on notice." Pl.'s Opp'n at 22. Plaintiff did not, however, supply the police report he cites, and he cannot simply rely on allegations made in his Complaint to overcome Defendant's motion. *See Anderson*, 477 U.S. at 250; *Celotex Corp.*, 477 U.S. at 324. Accordingly, the court finds that Plaintiff did not satisfy the notice requirements of § 12-309 and, therefore, cannot proceed on his DCHRA claim.